IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LUIS FLORES-ORTIZ (7) <br><br> Defendant. | CRIMINAL NO. 15-605 (PAD) |

**MEMORANDUM AND ORDER**

Before the Court is the "United States of America's Motion for Stay and Revocation of Bail Order or for Stay of Bail Order and Request for *De Novo* Bail Hearing" (Docket No. 81), which defendant opposed (Docket No. 99). For the reasons explained below, defendant shall be detained without bail pending trial.

## I.  BACKGROUND

On September 24, 2015, the defendant, Luis Flores-Ortiz, was indicted in an eleven (11) count indictment charging him and nine (9) other Puerto Rico Police Officers with engaging in racketeering-related activity. On September 28, 2015, the government moved for pretrial detention (Docket No. 6).

On October 13, 2015, a detention hearing was held before Magistrate Judge Marcos E. López, who authorized Flores' release on bail with home incarceration and other conditions (Docket No. 82). The next day, the government moved for stay and revocation of the bail order, and requested a de novo bail hearing (Docket No. 81).

On October 14, 2015, the court granted in part the government's motion, staying defendant's release pending a *de novo* determination, and ordered Flores to respond to the government's motion not later than October 21, 2015 (Docket No. 84). After seeking and obtaining

an extension, Flores opposed the motion (Docket No. 99). On November 13, 2015, the court held a *de novo* hearing. The parties proceeded via proffer and documentary evidence.

## II.   STANDARD OF REVIEW

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Holland, 922 F.Supp.2d 70, 71 (D.D.C. 2013).

Once triggered, the presumption imposes on the defendant a burden of production. United States v. O'Brien, 895 F.2d 810, 814-815 (1st Cir. 1990). The burden is not heavy. United States v. Stone, 608 F.3d 939, 946 (6th Cir. 2010). It is satisfied introducing at least some evidence contrary to the facts presumed. Id. Rebuttal evidence does not burst or destroy the presumption, which does not disappear, maintaining evidentiary weight. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); O'Brien, 895 F.2d at 814-815.

So conceived, the presumption represents Congress' general factual view about special risks of danger to the community and flight risks presented by defendants who commit crimes to

which the presumption attaches. United States v. Bess, 678 F.Supp.929, 934 (D.D.C. 1988). In those cases, the court must weigh the evidence, giving the presumption the value of evidence, and determine upon which side the evidence preponderates. United States v. Jessup, 757 F.2d 378, 383 (1st Cir. 1985).

The government retains the burden of persuasion throughout, in both presumption and non-presumption cases. Stone, 608 F.3d at 946; Bess, 678 F.Supp.929 at 932. In determining whether it has met that burden, the court must consider (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the danger posed to the community by defendant's release, in addition to the presumption, if applicable. 18 U.S.C. § 3142(g); Jessup, 757 F.2d at 384. Review of a magistrate judge's release order is *de novo*. United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990). The court must state in writing the reasons for the action taken. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989); O' Brien, 895 F.2d at 813.

### III. DISCUSSION

A. PRESUMPTION

The statutory presumption applies here. As previously mentioned, it is triggered in connection with offenses listed in 18 U.S.C. § 3142(e). These include offenses with a maximum term of imprisonment of 10 years or more under the Controlled Substances Act, 21 U.S.C. § 801 et seq., the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq., or the Marine Drug Law Enforcement Act, 46 U.S.C. App. 1901 et seq. See, Section 3142(f)(1)(C).[1]

---

[1] Other offenses triggering the presumption are offenses under 18 U.S.C. 924(c)(use of firearm in crime of violence or in drug trafficking crime), 18 U.S.C. § 956(a)(conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country), or 18 U.S.C. § 2332(b) (acts of terrorism transcending national boundaries); an offense listed in 18 U.S.C. § 2332(b)(5)(B)(federal crime of terrorism) for which a maximum term of imprisonment of 10 or

In the Notice of Special Findings for Count One (Conspiracy to Possess with Intent to Distribute a Controlled Substance), Flores was charged with knowingly and intentionally combine, confederate, and agree with the codefendants and other persons, known and unknown, to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii), all in violation of 21 U.S.C. § 846.

Conspiracy to possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine is considered a drug trafficking crime. Hazime v. Immigration and Naturalization Service, 19 F.3d 18, 1 (6th Cir. 1994). It carries the penalty of the substantive offense, to wit: a term of imprisonment of not less than 10 years or more and life. 21 U.S.C. § 841(A), 846; United States v. Twine, 385 Fed.Appx. 27, 28-29 (2d Cir. 2010). As such, it is an offense for which a maximum term of imprisonment of 10 years or more is

---

more years is prescribed; an offense under Chapter 77 of 18 U.S.C. ("Peonage, Slavery, and Trafficking in Persons"), for which a maximum term of imprisonment of 20 years or more is prescribed; or an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252(A)(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 (kidnapping, sex trafficking sexual abuse, abusive sexual contact, sexual exploitation, selling or buying of children, certain child pornography offense, and transportation for illegal sexual offenses and related crimes). 18 U.S.C. § 3142(e)(3). The presumption is also triggered when the judicial officer finds that a defendant charged with a crime listed in § 3142(f) was previously convicted for a similar crime while on release pending trial and no more than 5 years has elapsed since the conviction or release from imprisonment for that prior offense. 18 U.S.C. § 3142(e)(2). For those purposes, qualifying offenses include crimes of violence under 18 U.S.C. § 3156(a)(4); a violation of 18 U.S.C. § 1591 ("Sex trafficking of children or by force, fraud or coercion"); offenses listed in 18 U.S.C. § 2332(B) (acts of terrorism transcending national boundaries) for which a maximum term of imprisonment is 10 years or more is prescribed; and an offense for which the maximum sentence is life imprisonment or death; an offense for which a maximum term of imprisonment of 10 years or more is prescribed under the Controlled Substances Act, 21 U.S.C. § 801 et seq., the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq., or the Marine Drug Law Enforcement Act, 46 U.S.C. App. 1901 et seq.; any felony if the person has been convicted of 2 or more of the described offenses or 2 or more equivalent State or local offenses or a combination of such offenses; or any felony that is not otherwise a crime of violence that involves a minor victim, or possession or use of a firearm or destructive device, or any other dangerous weapon; and failure to register under 18 U.S.C. § 2250 in connection with the Sex Offender Registration and Notification Act. 18 U.S.C. § 3142(e)(2). In turn, these offenses serve to justify detention under 18 U.S.C. § 3142(e)(1).

prescribed in the Controlled Substances Act, 21 U.S.C. § 801 et. seq., and thus, one of the offenses activating the presumption of dangerousness and risk of flight set in 18 U.S.C. § 3142(e)(3). See, Twine, 385 Fed.Appx. at 29 (so noting).

Flores pointed to what may be described as weaknesses in the government's proffer, presenting documentary evidence in support; and to elements in his personal characteristics and history that, in his view, lay out a combination of conditions justifying release. Because his burden is one of production, and it is not heavy, the court will consider the presumption rebutted and by extension, as one retaining evidentiary weight to be evaluated along with the criteria set in 18 U.S.C. § 3142(g), discussed below.

B. DETENTION FACTORS

1. Nature and Circumstances of Offense

This criterion permits inquiry into whether the case involves a crime of violence under 18 U.S.C. § 3156(a)(4); an offense under 18 U.S.C. § 1591 ("Sex trafficking of children or by force, fraud or coercion"); a Federal crime of terrorism; or a crime involving controlled substances, firearms, explosives, or destructive devices. 18 U.S.C. § 3142(g)(1).

A crime of violence consists of: (A) an offense that has as an element, the use, attempted use, or threated use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force may be used in the course of committing the offense; or (C) certain specified sex offenses (not pertinent to this case). U.S.C. § 3156(a)(4).[2]

---

[2] While Clause (A) covers offenses that fall within the conventional notion of a crime of violence, Clause (B) is intended to cast a wider net, specifying that it relates to any other offense that does not necessarily involves violence but by its nature involves a substantial risk that physical force may be used in committing the offense. See, United States v. Dillard, 214 F.3d 88, 92 (2d Cir. 2000)(so noting).

With that in mind, Flores is charged with having been engaged in a racketeering conspiracy spanning 6 years as an officer of the Puerto Rico Police Department. As charged, he was part of an enterprise whose members and associates illegally entered premises used or occupied by persons suspected of being involved in criminal activity and stole money and property; illegally entered premises used or occupied by persons suspected of being engaged in drug trafficking and stole narcotics; conducted traffic stops of vehicles driven or occupied by persons suspected of being engaged in criminal activity and stole money and property; conducted traffic stops of vehicles driven or occupied by persons suspected of being engaged in drug trafficking and stole narcotics; and extorted money or things of value in exchange for the release of individuals who had been arrested.

Additionally, the members and associates of the enterprise stand charged for planting evidence in order to falsely arrest individuals; modifying facts and testimony in criminal matters in exchange for expected bribe payments and/or to further the goals of the enterprise; failing to appear in court in order to ensure the dismissal of cases in exchange for expected bribe payments; sold and distributing wholesale quantities of narcotics; sharing proceeds illegally obtained from individuals and premises; used the power, authority, and official position as Puerto Rico Police officers to promote and protect the operation of the conspiracy; using Puerto Rico Police paperwork and fraudulently obtained court documents, including, but not limited to, property receipts and search warrants, in order to promote and protect the operation of the conspiracy; and using the facilities, equipment, and resources of the Puerto Rico Police Department, including but not limited to, Puerto Rico Police firearms, badges, tools, information, and jackets to promote and protect the operation of the conspiracy.

At bottom, the case against Flores involves crimes of violence, drug offenses, and offenses carrying significant terms of imprisonment fitting the statutory detention profile. Extortion in connection with a racketeering enterprise has been recognized as a crime of violence. See, United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2005)(quoting in part 18 U.S.C. 1951(b)(2), to the effect that extortion means, "the obtaining of property from another with his consent, induced by wrongful use of actual or threatened force, violence or fear …"). Similarly, conspiracy to commit an act of violence is an act involving a substantial risk of violence. United States v. Mitchell, 23 F.3d 1, 4 (1st Cir. 1994)(citing United States v. Cruz, 805 F.2d 1464, 1474 n. 1 (11th Cir. 1986)). Furthermore, separate and apart from crimes of violence, drug trafficking is involved, and it exposes Flores to a minimum term of ten (10) years and up to life in prison. Thus, the nature and circumstances of the acts charged favor detention.

2. Weight of Evidence

First, the government proffered that at least 2 witnesses with personal knowledge will testify in connection with the shooting of a federal fugitive as he was attempting to climb over a wall. He was shot 3 times in the back. The officers at the scene realized that the fugitive was unarmed. Then Flores, a Lieutenant or Sergeant in the Puerto Rico Police Department, took it upon himself to gather up a group of officers, and to instruct them not only as to how the event had occurred, but that they were not to speak with anyone until they got their stories straight about what they were going to say. He also gave them an injunction as to who would be providing the sworn statements that would later be taken to the prosecutor for charges to be filed. From this perspective, Flores knew that evidence had been planted, and orchestrated how it was going to be presented to state authorities to cover up the fact that officers had shot somebody that was unarmed at the time that he was fleeing.

Second, the government proffered that witnesses will testify that as a Lieutenant in the Puerto Rico Police Department, Flores had control over the groups and work groups that would go out, and that it was customary for them to go to public housing projects without search warrants or orders, and under the guise of going to check out apartments would go inside those suspected of being used by drug dealers and steal personal items from the apartments. Flores observed them steal and did nothing about it.

Third, the government proffered that witnesses will testify that Flores would gather intelligence from addicts in drug points and pay informants with controlled substances, and that on another occasion he instructed officers to put away drugs and guns they had seized in Caguas, saving them for when there was an interdiction in San Juan to pad the statistics in San Juan. In addition, Flores went with other officers from the San Juan Drug Division to the Guayama State Prison, extracted prisoners allegedly because they were going to point out residences for them, and instead took the prisoners to the area behind the Puerto Rico Department of Justice, where they stayed 3 or 4 hours. At night they brought the prisoners back to the Guayama jail.

Flores argues that the government only proffered evidence in connection with one of the alleged predicate acts, and in consequence, that no other predicate act should be considered here. That act, set forth in Paragraph 7(b) of the Indictment, refers to the incident involving the shooting of the federal fugitive and the planting of evidence. On that basis, Flores claims that the evidence as to that incident is weak, for it consists of testimony of convicted felons, 2 of them former Puerto Rico Police officers prosecuted and convicted for corruption in Criminal Case No. 14-364 (DRD), as to whom, when arrested, the United States Attorney held a press conference calling them liars, a disgrace to the uniform, and persons who could not be trusted. Moreover, he contends that the other witness (the federal fugitive) has a history of shooting at police officers; shot down a police

helicopter; and pled guilty in state court to possession of a firearm and attempted murder in a case arising out of the incident to which the Indictment refers.

But if those witnesses were believed by the fact finder during trial, what the government has proffered will be established. Hence, what Flores proposes is not inconsistent with a finding of guilt. See, United States v. Gray, 529 F.Supp.2d 177, 181 (D.Mass. 2007)(so noting in rejecting claim that weight of evidence was weak). Compare that situation with the one evaluated in United States v. Torres-Rosario, 600 F.Supp.2d 327, 334 (D.P.R. 2009), where the only witness against the defendant failed to identify him in court during the bail hearing even though he was the only person in the courtroom dressed in an inmate jumpsuit and was sitting at the defense counsel table next to his attorneys.

What is more, Flores has not been charged in a one-count indictment but in an eleven-count indictment charging him with participating in a racketeering conspiracy. As the Supreme Court explained in Salinas v. United States, 522 U.S. 52, 65 (1997), a conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts that are elements of a substantive count, to be found guilty of the racketeering conspiracy. It suffices that he adopted the goal of furthering or facilitating the criminal endeavor. Id. For the same reason, the evaluation that the Bail Reform Act calls for is not limited to predicate acts ascribed to a particular defendant in a racketeering conspiracy, but encompasses "the objectives and means of the conspiracy as a whole, as alleged through the predicate acts ascribed to all enterprise participants." See, Ciccone, 312 F.3d at 542 (so stating).

3. History and Characteristics of the Defendant.

The Bail Reform Act directs the court to consider elements related to the defendant's history and characteristics such as employment, length of residence, community ties, criminal

history, and drug and alcohol use.  18 U.S.C. § 3142(g)(3).  According to the Pretrial Services Report, Flores has been with the Puerto Rico Police Department for 19 years.  He was born and educated in Lajas, Puerto Rico.  His common law wife since 1996 and he procreated 2 children, ages 14 and 9.  They live in his address of record.  Flores has no criminal history, and reported no history of substance abuse.  He expressed having frequent communication with family members and sustaining a good relationship with them.  Further, during *de novo* hearing defense counsel stated that Flores' father is a former Puerto Rico Police Officer, and that Mr. Flores' parents are assisting their son, offering to post their house in Lajas – basically everything they have – as bail.  He pointed out that together with home detention and electronic monitoring, 2 of the conditions that the Magistrate Judge imposed, all of these elements present a negligible risk of flight.  These elements weigh in favor of release.

That said, the elements related to a defendant's history and characteristics are ostensibly targeted at establishing the defendant's likelihood to flee.  However, the language introducing the list of factors to be considered by a court when reviewing a detention order refers both to reasonably assuring appearance and safety.  So there is an inherent ambiguity as to whether each of the factors listed is declared to be relevant to both appearance and safety.  See, Torres-Rosario, 600 F.Supp.2d at 334 (D.P.R. 2009)(so recognizing).

In the same way, while certain factors – such as the nature of the crime and weight of the evidence – may more naturally focus attention on dangerousness rather than appearance, the seriousness of the charge and the strength of the evidence can create a strong incentive for a defendant's flight.  Id.  That is the situation here, as Flores faces life imprisonment, the prospect of which could surely create a motive to flee.  Likewise, as stated in the Pretrial Services Report, Flores has 2 siblings.  His sister lives in New Jersey, whereas his brother lives in New York.  And

he has traveled to Florida, Connecticut, New York, New Jersey, Pennsylvania, Georgia, and the Dominican Republic for leisure. For that reason, these factors neutralize the aspects of Flores' personal history and characteristics favoring release, to the point of tilting the balance toward detention.

    4.   The danger posed to the community by defendant's release

During the span of the conspiracy, Flores was a leader – a Sergeant and a Lieutenant – in the Puerto Rico Police Department. Considering his former position as a police officer, his background in weapons handling, the leadership role he had in the criminal enterprise, and his contacts with people involved in drug points and other criminal activity, his release would be dangerous to the community.

## IV. CONCLUSION

Having carefully considered all the evidence in this matter as well as the available range of release conditions, the court concludes that the government has shown, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of the community and its members if Flores is released; and by preponderance of the evidence, that no condition or combination of conditions will reasonably assure Flores' presence in court should he be released.

The presumption, the nature and circumstances of the offenses charged, the weight of the evidence, the danger posed to others, the potential penalty, and Flores' close family contacts and experience traveling outside Puerto Rico together outbalance other elements in Flores' personal and history and characteristics arguably supporting release even under the conditions that the Magistrate Judge set at Docket No. 82. Therefore, Flores shall be detained without bail pending trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of November, 2015.

S/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge
